Charles F. DERRICK et al., Appellants,

v.

COUNTY BOARD OF EDUCATION of DONLEY COUNTY, Texas, et al., Appellees.

No. 7327.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 23, 1963.

Rehearing Denied Jan. 20, 1964.

260

Underwood, Wilson, Sutton, Heare & Berry, Folley, Snodgrass & Calhoun, Amarillo, for appellants.

W. T. Link, Knorpp & Slavin, Clarendon, for appellees.

CHAPMAN, Justice.

This suit involves election contests filed by Charles F. Derrick and other residents of Clarendon Junior College District and purported district, some of whom were owners of taxable property and resided within the bounds of the district as it existed prior to the purported enlargement and some of whom were owners of taxable property and resided outside the bounds as it existed prior to the purported enlargement but within the purported enlargement.

One suit was filed contesting the election to enlarge the territory. Another was filed contesting the election to determine the power of the district to levy and collect ad valorem taxes for maintenance of public free schools in Clarendon Junior College District as purportedly extended, and thus give effect to the first election held to extend the territory of the district. The third was filed seeking to have the two elections declared null and void and for an injunction restraining appellees from attempting to give application to the elections with respect to attempting to levy, assess, or collect ad valorem taxes on any property not situated within the district prior to such elections.

Motions for summary judgments were filed by all parties and the three cases were consolidated. Upon the hearing the trial court overruled the motion for summary judgment of contestants and granted the motion for summary judgment of contestees.

Reversal is urged upon thirty-seven points involving a myriad of irregularities in the elections, including the very authority of those who called the elections and declared the results to act, and the statutory authority to extend the Junior College

District to the territory purportedly annexed.

The first question with which we are faced is the contention of contestees to the effect that contestants were without authority to sue as individuals but that the contests could be made only through quo warranto proceedings.

The adoption of the constitutional amendment of 1891 gave district courts original jurisdiction to try contested elections. Article 5, Section 8, Constitution of Texas, Vernon's Annotated Texas Constitution, Volume 2. Jurisdiction is also given the district court by legislative enactment. Article 9.01, V.A.T.S., Election Code.

Contestants assert by brief that they as residents of the territory involved had authority to contest the elections under Article 5, Section 8, Constitution of Texas, as effectuated by Articles 9.30 and 9.31, V.A.T.S., Election Code. Those two articles were respectively 3069 and 3070 R.C.S. 1925; 3077 and 3078 R.C.S.1911; 1804t and 1804u R.C.S.1895; and 1752 and 1753 R.C.S.1879. The articles read as follows:

### Article 9.30

"If the contest be for the validity of an election held *for any other purpose than the election of an officer or officers in any county or part of a county* or precinct of a county, or in any incorporated city, town, or village, *any resident* of such county, precinct, city, town, or village, *or any number of such residents, may contest such election in the district court of such county* in the same manner and under the same rules, as far as applicable, as are prescribed in this chapter for contesting the validity of an election for a county office."

### Article 9.31

"In any case provided for in the preceding Section, *the county attorney of the county,* or if there is no county attorney, the district attorney of the district, or the mayor of the city, town or village, *or the officer who declared the official result of said election, or one of them,* as the case may be, *shall be made the contestee,* and shall be served with notice and statement, and shall file his reply thereto as in the case of a contest for office; but in no case shall the costs of such contest be adjudged against such contestee, or against the county, city, town, or village which they may represent, nor shall such contestee be required to give bond upon an appeal."

All emphases herein are ours unless otherwise stated.

Thus, even though some of the predecessor articles to these just quoted were first enacted long before the 1891 amendment of Section 8, Article 5, of the Texas Constitution, it was uniformly held by our Supreme Court prior to the adoption of the 1891 amendment that the district court was without jurisdiction to try contested elections. De Shazo v. Webb, 131 Tex. 108, 113 S.W.2d 519.

In the case just cited the court held in effect that Articles 3069 [9.30, Election Code] and 3070 [9.31, Election Code] have been properly re-enacted since the adoption of the constitutional amendment of 1891, above mentioned, and that they plainly provide who can bring the contest and who shall be made the contestees. It is obvious that contestants brought their suits under such articles, naming the county attorney of Donley County, the county superintendent thereof, and the county board members as contestees.

■ Accordingly, the "cases" referred to in Section 21, of Article 5, Texas Constitution, and "suits and pleas" referred to in Section 22, Article 4, Texas Constitution, with respect to the county and district attorney and attorney general representing the State, of which free public school districts are political subdivisions, have no reference to contested elections; i.

e., legislative acts provided for in Section 8 of Article 5, Constitution of Texas. De-Shazo v. Webb, supra.

"The capacity conferred by articles 3069 and 3070 [superseded by articles 9.30 and 9.31, Election Code] on certain parties to contest elections, other than for the purpose of electing officers, is not based on any individual property right; but upon the theory that a remedy should be furnished, legislative in its nature, whereby * * * elections may be contested * * *." De Shazo v. Webb, supra.

In a suit contesting the authority of a wife of an impeached former governor to have her name placed upon the ballot for Governor of Texas, where the suit was brought by a person having no more interest in the subject matter than to pre-serve the public interest, our Supreme Court in Dickson v. Strickland, 114 Tex. 176, 265 S.W. 1012, held: "His lack of special interest is fatal to his capacity to maintain his suit *in the absence of a valid statute authorizing him to sue.*" Here we have valid statutes [Articles 9.30 and 9.31, Election Code], *legislative acts,* au-thorizing any resident or any number of residents within any county or part of a county to contest an election held *for any other purpose than the election of an of-ficer or officers.*

■ Even if it should be said that quo warranto was an appropriate method of contesting the elections here considered, such proceeding is only cumulative of other proper methods. Rule 782, Section 6, Ver-non's Ann.Texas Rules with respect to quo warranto proceedings provides: "The rem-edy and mode of procedure hereby pre-scribed shall be construed to be cumulative of any now existing."

Our Supreme Court in speaking of quo warranto has said " * * * it has not been held that this is the only remedy that may be pursued, nor does the statute con-template that it should." McAllen v. Rhodes, 65 Tex. 348.

In Parks v. West, 102 Tex. 11, 111 S.W. 726, it was urged that the attack of plain-tiffs was upon the corporate existence of Merten's Independent School District in a collateral proceeding and that the validity of the incorporation could be questioned only by the State in a direct proceeding. Our Supreme Court said:

" * * * the attack of the plaintiffs is not merely upon the corporate ex-istence of the district, *but is directed against the power of the defendants to lay burdens on their property and subject them to the payment of taxes. Surely they have the right to do that although the reason they assign for the lack of power may also go to the right of the district to exist* under the Con-stitution. Certainly a property holder has the right to say to the court that he is protected by the Constitution from the imposition of a tax by per-sons to whom the Constitution, in ef-fect, denies such power. If the rule relied on by defendants should pre-clude plaintiffs from making the con-tention now, when and in what way could they make it? So far as we can see, the rule would equally apply to an effort to resist the collection of the tax by suit or otherwise. The consequence to which the contention leads is that, while the Constitution does not permit such a school district to exist and levy taxes, it may yet do both and force property owners to pay until the officers of the state see fit to intervene. Useful and con-venient as is the doctrine invoked, we cannot give our assent to an ap-plication of it, which would deny to the plaintiffs the protection sought of their property rights."

Here, as in the case from which we have just quoted, the attack of appellants is also directed against the power of the purported district to lay burdens on their property and subject them to the payment of taxes.

■ A distinction is made in many of the cases by the acts that are merely voidable and those which are wholly invalid and void, as the acts are alleged to be in this case and as some of them clearly are. In City of Galena Park v. City of Houston, 133 S.W.2d 162, (error refused), the court held:

"It also follows as a corollary, from the construction herein given the Act under review, that appellant's initial objection to the effect that its own incorporation could not be called into question, as was done in this proceeding, without the joinder of the State under a writ of quo warranto, is unsound; this, for the reason that its attempt to incorporate that portion of the territory already lying within such special limits of the City of Houston —being in contravention of a general law of the State—*was wholly invalid and void, thereby subjecting such pseudo-incorporation to collateral attack without the joinder of the State.*"

See also Lynn County School Board v. Garlynn Common County Line School District, Tex.Civ.App., 118 S.W.2d 1070, second sentence, syl. 5 (writ refused); Town of Sunnyvale v. Dallas County Board of School Trustees, Tex.Civ.App., 283 S. W.2d 296 (N.W.H.) ; Mesquite Independent School Dist. v. Gross, 123 Tex. 49, 67 S.W.2d 242 (Com.App. opinion adopted).

In the Lynn County School Board case just cited this court said:

"Since the purported grouping of the Magnolia district with the New Lynn Independent district was void, it is our opinion that the injunction proceeding herein was proper under the facts in this case, and we cannot agree with appellants that the only proceeding available to the appellees was that of quo warranto."

In the Mesquite Independent School District case just cited the Supreme Court said: "Since the board acted without color of authority, and without potential jurisdiction, its order was and is utterly void, and subject to collateral attack."

At least two of the cases cited and relied on by appellees recognize that acts which are void are subject to collateral attack. In Kuhn v. City of Yoakum, 6 S.W.2d 91 (Tex.Com.App.), the court said: "A mere irregular exercise thereof *did not render its act void, so as to subject the same to collateral attack.*"

In Phillips v. City of Odessa, Tex.Civ. App., 287 S.W.2d 518 (N.R.E.) the court held the action of a municipality in extending its boundaries could not be attacked collaterally by individuals only " * * * *unless the action or ordinance was void on its face.*"

■ Therefore, we hold Articles 9.30 and 9.31, Election Code, confer on the contestants here the power and authority to maintain the action they filed, there being no constitutional provision prohibiting them. De Shazo v. Webb, supra.

The next question with which we are faced is what irregularities may be considered in connection with calling, holding and declaring the results of the election and giving effect to same.

In an election contest involving proposed amendments to a city charter it has been held that " * * * an election is not a single event, but a process, and the entire process is subject to contest, including the manner of giving notice of the election, the manner in which the ballots are prepared, and various other things which of necessity precede an election." Turner v. Lewie, Tex.Civ.App., 201 S.W. 2d 86 (writ dismissed).

Our Supreme Court has said: "In determining what a 'contested election' is, we must bear in mind that an election in this state is not a single event, but a *process*, and that the entire *process* is subject to contest." Dickson v. Strickland, supra.

We must then look to the acts involving the election to determine if they were void.

■ The record indicates clearly that the elections were attempted to be held under Article 2815h, Sections 21 and 21a, V.T.C.S. Section 21 provides that *an independent school district or districts* and *a common school district or districts* may be annexed to an adjacent junior college district. Here the Hedley Independent School District in its entirety was attempted to be annexed but was rejected by the voters. The other territory did not comprise one or more entire independent school district or entire common school district and the efforts as to that territory were therefore wholly invalid and void as *without statutory authority.*

Additionally, Section 21 of Article 2815h provides the petition for election shall be presented to the County Board of Education or to the County Commissioners Court in the event there is no County Board of Education. Donley County could not have had a County Board of Education because such a body is provided for only in a County Unit System. Chapter 12, County Unit System, Article 2703, V.A.T.S. The deposition of the County Superintendent shows without question that Donley County did not have a County Unit System. The petition for election was not presented to the Commissioners Court.

Article 2676, V.A.T.S., provides the general management and control of the public free schools and high schools in each county *unless otherwise provided by law* shall be vested in five county school trustees elected from the county, one of whom shall be elected from the county at large by the qualified voters of the county and one from each commissioner's precinct by the qualified voters of each precinct and who shall hold office for a term of two years.

A study of Chapter 11, Article 2676, V.A.T.S., et seq., titled "Schools" and a study of Chapter 12, Article 2702, V.A.T.S.,

et seq., with respect to the County Unit System shows the completely different duties and functions of the county school trustees and the County Board of Education. They are elected in a different manner, at a different time and for a different term. Also, the former is a body corporate while the latter is not. Under the County Unit System the county superintendent is appointed, while under the system providing for county school trustees the county superintendent is elected.

■ Ruth M. Richerson, County Superintendent of Donley County, was elected, and properly so, because the "evidence" clearly shows Donley County did not have a County Unit System and therefore could not have had a County Board of Education as that term is defined under the County Unit System. Therefore, the County School Trustees were wholly without authority to act in the calling of the elections or in canvassing the returns thereof and their acts were void and of no effect. Our court has held: "It is well established by the decisions that an election must be called by the authority designated by law, otherwise the election is void." Pollard v. Snodgrass, Tex.Civ.App., 203 S.W.2d 641 (writ dismissed). We held similarly in Smith v. Morton Independent School Dist., Tex.Civ.App., 85 S.W.2d 853 (writ dismissed). In 129 A.L.R. on Page 261 it is stated:

"In cases where the body essaying to exercise the power of organization or annexation does so without jurisdiction, its action is void, and may be collaterally attacked in a suit for an injunction against the enforcement of a tax levied upon property thus ineffectually sought to be incorporated. Peru v. Bearss (1877) 55 Ind. 576; Dees v. Lake Charles (1898) 50 La. Ann. 356, 23 So. 382; Pool v. Townsend (1920) 58 Mont. 297, 191 P. 385; Hemple v. Hastings (1907) 79 Neb. 723, 113 N.W. 187; Leach v. Tillamook (1912) 62 Or. 345, 124 P. 642;

Thurber v. McMinnville (1912) 63 Or. 410, 128 P. 43; Waco v. Higginson (1920; Tex.Civ.App.) 226 S.W. 1084 (reversed on other ground in (1922; Tex.Com.App.) 243 S.W. 1078); Port Arthur v. Gaskin (1937; Tex.Civ. App.) 107 S.W.(2d) 610."

There are many other irregularities shown in the elections unnecessary for us to discuss in view of what we have already said.

We believe under the authority of Lynn County School Board v. Garlynn Common County Line School District, supra, (writ refused) appellants were also entitled to the injunction sought, though that question becomes immaterial in view of our holding that the two elections were void and of no effect.

In their reply brief appellees raise the question of sufficiency of service in Causes Nos. 3111 and 3112.

It is without question in the record that proper service and return was made on Edwin Eanes, one of the members of the Board which sought to order the election and declare the result and who was present at each meeting. This fact gave jurisdiction to the trial court so far as service is concerned even if service on some of the parties did not show a proper technical return. Funderburk v. Schulz, 293 S.W.2d 803 (N.W.H.). Proper service was also shown on the County Attorney of Donley County, who was made one of the contestees in accordance with Articles 9.30 and 9.31, Election Code. We believe under this record proper service and return on him would have been sufficient. Jordan v. Overstreet, Tex.Civ. App., 352 S.W.2d 296 (N.W.H.).

In Cause 3112 the return was signed by the sheriff of Donley County, without naming him, by C. Huffman, Deputy. It has been held that a return of service by any officer authorized by law to make it is prima facie evidence of the material facts recited therein. Cortimiglia v. Miller, Tex.Civ.App., 326 S.W.2d 278 (N.W.H.). In any event, there is no contention made that service was not had and there is no question but that the parties appeared, answered and joined issues in the three suits. We believe, therefore, that the contentions on improper returns are without merit.

Accordingly, the summary judgment granted by the court for appellees was improper and the court should have granted the summary judgment for appellants. The judgment of the trial court is therefore reversed and rendered in accordance with this finding.